# EXHIBIT A

| STATE OF NORTH CAROLINA | File No. 22 CVS 2643 |
|---|---|
| Mecklenburg County | In The General Court Of Justice<br>☐ District  ☒ Superior Court Division |

| Name Of Plaintiff |
|---|
| Ya "Annia" Shen |
| Address |
| 8145 Kalson St |
| City, State, Zip |
| Huntersville  NC  28078 |

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

**VERSUS**

| Name Of Defendant(s) | Date Original Summons Issued |
|---|---|
| Akoutis Technologies, Inc. | February 18, 2022 |
| | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Akoutis Technologies, Inc.<br>9805-A Northcross Center Court<br>Huntersville  NC  28078 | |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| Joshua R. Van Kampen<br>Van Kampen Law, PC<br>315 E. Worthington Ave.<br>Charlotte  NC  28203 | 2·18·2022 | 12:30  ☐ AM  ☒ PM |
| | Signature | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

☐ **ENDORSEMENT (ASSESS FEE)**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

| Date Of Endorsement | Time  ☐ AM  ☐ PM |
|---|---|
| Signature | |
| ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 6/16
© 2016 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

Mecklenburg County

**FILED** 2022 FEB 18 P 12:30
MECKLENBURG CO., C.S.
BY _____

File No. **22 CVS 2643**

In The General Court Of Justice
☐ District ☒ Superior Court Division

# GENERAL
## CIVIL ACTION COVER SHEET
☒ INITIAL FILING ☐ SUBSEQUENT FILING

Rule 5(b), General Rules of Practice For Superior and District Courts

**Name And Address Of Plaintiff 1**
Ya "Annia" Shen
8145 Kalson St
Huntersville NC 28078

**Name And Address Of Plaintiff 2**

VERSUS

**Name Of Defendant 1**
Akoutis Technologies, Inc.
9805-A Northcross Center Court
Huntersville NC 28078

**Summons Submitted** ☒ Yes ☐ No

**Name Of Defendant 2**

**Summons Submitted** ☐ Yes ☐ No

**Name And Address Of Attorney Or Party, If Not Represented** (complete for initial appearance or change of address)
Joshua R. Van Kampen
Van Kampen Law, PC
315 E. Worthington Ave.
Charlotte NC 28203

**Telephone No.** 704-247-3245
**Cellular Telephone No.** 704-890-8735
**NC Attorney Bar No.** 32168
**Attorney E-Mail Address** josh@vankampenlaw.com

☒ Initial Appearance in Case ☐ Change of Address

**Name Of Firm** Van Kampen Law, PC
**FAX No.**

**Counsel for**
☒ All Plaintiffs ☐ All Defendants ☐ Only (list party(ies) represented)

☒ Jury Demanded In Pleading
☐ Complex Litigation

☐ Amount in controversy does not exceed $15,000
☐ Stipulate to arbitration

## TYPE OF PLEADING

(check all that apply)
- ☐ Amend (AMND)
- ☐ Amended Answer/Reply (AMND-Response)
- ☐ Amended Complaint (AMND)
- ☐ Assess Costs (COST)
- ☐ Answer/Reply (ANSW-Response) (see Note)
- ☐ Change Venue (CHVN)
- ☒ Complaint (COMP)
- ☐ Confession Of Judgment (CNJF)
- ☐ Consent Order (CONS)
- ☐ Consolidate (CNSL)
- ☐ Contempt (CNTP)
- ☐ Continue (CNTN)
- ☐ Compel (CMPL)
- ☐ Counterclaim (CTCL) Assess Court Costs
- ☐ Crossclaim (list on back) (CRSS) Assess Court Costs
- ☐ Dismiss (DISM) Assess Court Costs
- ☐ Exempt/Waive Mediation (EXMD)
- ☐ Extend Statute Of Limitations, Rule 9 (ESOL)
- ☐ Extend Time For Complaint (EXCO)
- ☐ Failure To Join Necessary Party (FJNP)

(check all that apply)
- ☐ Failure To State A Claim (FASC)
- ☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
- ☐ Improper Venue/Division (IMVN)
- ☐ Including Attorney's Fees (ATTY)
- ☐ Intervene (INTR)
- ☐ Interplead (OTHR)
- ☐ Lack Of Jurisdiction (Person) (LJPN)
- ☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
- ☐ Modification Of Child Support In IV-D Actions (MSUP)
- ☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
- ☐ Petition To Sue As Indigent (OTHR)
- ☐ Rule 12 Motion In Lieu Of Answer (MDLA)
- ☐ Sanctions (SANC)
- ☐ Set Aside (OTHR)
- ☐ Show Cause (SHOW)
- ☐ Transfer (TRFR)
- ☐ Third Party Complaint (list Third Party Defendants on back) (TPCL)
- ☐ Vacate/Modify Judgment (VCMD)
- ☐ Withdraw As Counsel (WDCN)
- ☐ Other (specify and list each separately)

**NOTE:** All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must either include a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.

AOC-CV-751, Rev. 1/14
© 2014 Administrative Office of the Courts
(Over)

| | CLAIMS FOR RELIEF | |
|---|---|---|
| ☐ Administrative Appeal (ADMA)<br>☐ Appointment Of Receiver (APRC)<br>☐ Attachment/Garnishment (ATTC)<br>☐ Claim And Delivery (CLMD)<br>☐ Collection On Account (ACCT)<br>☐ Condemnation (CNDM)<br>☐ Contract (CNTR)<br>☐ Discovery Scheduling Order (DSCH)<br>☐ Injunction (INJU) | ☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP)<br>☐ Medical Malpractice (MDML)<br>☐ Minor Settlement (MSTL)<br>☐ Money Owed (MNYO)<br>☐ Negligence - Motor Vehicle (MVNG)<br>☐ Negligence - Other (NEGO)<br>☐ Motor Vehicle Lien G.S. 44A (MVLN)<br>☐ Possession Of Personal Property (POPP) | ☐ Product Liability (PROD)<br>☐ Real Property (RLPR)<br>☐ Specific Performance (SPPR)<br>☒ Other *(specify and list each separately)*<br>1. Wrongful Discharge<br>2. Violation of Title VII of the Civil Rights Act of 1964<br>3. Violations of the Equal Pay Act of 1963 |

Date: 2/1r/22

Signature Of Attorney/Party: *[signed]*

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☐ Additional Defendant(s)   ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*

STATE OF NORTH CAROLINA  IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
MECKLENBURG COUNTY 2022 FEB 18 P 12: 30  CASE NO. _____

22 CVS 2643

MECKLENBURG CO., C.S.C.

BY_____

YA "ANNIA" SHEN,

    Plaintiff,

v.

AKOUSTIS TECHNOLOGIES, INC.,

    Defendant

**COMPLAINT**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1.    Akoustis Technologies, Inc. ("Akoustis" or "Defendant"), has one set of rules for Asian females employees, and another set of rules for its overwhelmingly male workforce. On paper, Ya "Annia" Shen ("Annia" or "Plaintiff") should have been a heralded, rising star at Akoustis. Annia was the very first filter design engineer Akoustis hired and was among the first twenty employees hired overall. She excelled in every facet an engineer would be judged objectively: she published multiple papers, secured multiple patents, and developed the filter product that brought in the highest revenue for Akoustis in the marketplace – one of only two filter products that ever-generated revenue. Annia excelled despite having a superior, Rohan Houlden, who was openly derisive and disrespectful to Annia and other female Akoustis employees.

2.    Akoustis allowed a toxic culture to fester that empowered Houlden to act out towards Annia during her tenure at Akoustis. Houlden systematically undermined Annia's

oversight as an Engineering Manager by not supporting Annia taking disciplinary action towards junior male engineers; he tried to bully her into not disputing a wholly unwarranted and factually inaccurate performance evaluation of her work; he stood by and watched other male employees bully Annia whenever she voiced an opinion; and ultimately promoted unqualified male subordinates to management positions while Annia was demoted only after 14 months to her promotion into management. These actions were supported by Akoustis by not taking the necessary actions to hold Houlden accountable but also it clearly show the double standard that was part of the company culture.

3. In completing the full cycle of discrimination, Akoustis added insult to injury by terminating Annia in a way to cause the most harm. Akoustis fired Annia eighty-one (81) days before she was to vest 17,500 shares, and in doing so Akoustis pocketed approximately $262,500 (at $15 per share) that Annia earned in sweat equity. In the past, Akoustis has publicly reported accelerated stock vesting for male employees, but not for Annia. Furthermore, Akoustis offered Annia only a two-week severance, a paltry sum given her contributions, and substantially less than what Akoustis is believed to have paid to similarly situated, departing male employees.

4. Akoustis was given ample opportunity to change course and to resolve this matter amicably but refused to do so. Accordingly, Annia turns to this Court to hold Akoustis accountable for its blatant and persistent pattern of discrimination toward Annia. Plaintiff therefore brings claims against Akoustis for wrongful discharge in violation of North Carolina public policy (County I), violations of Title VII of the Civil Rights Act of 1964 (Count II); and violations of the Equal Pay Act of 1963 (Count III).

## I. PARTIES, JURISDICTION & VENUE

5. Plaintiff is a resident of Mecklenburg County, North Carolina.

6. Defendant is a Delaware corporation with its principal office located in Huntersville, North Carolina, a part of Mecklenburg County, North Carolina.

7. At all relevant times, Plaintiff worked for Defendant at its Huntersville, North Carolina location. Venue is proper in Mecklenburg County pursuant to N.C.G.S. § 1-79.

8. Plaintiff seeks damages in sum sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C.G.S. § 7A-243.

## II. FACTUAL STATEMENT

9. On or around February 27, 2017, the Plaintiff joined Defendant as a Staff Design Engineer on the Design Engineering Team. She was about the 20th employee for Defendant.

10. Plaintiff was the first and only female Chinese design engineer in the company and one of only four Asian engineers on the Engineering team.

11. Plaintiff's duties included designing and developing Bulk Acoustic Wave ("BAW") filters.

12. Plaintiff was the most productive design engineer, publishing multiple papers, securing multiple patents, and her products are believed to have generated the most revenue for Defendant in her tenure. Prior to the Plaintiff working for Defendant, Defendant had yet to launch a profitable filter product in the marketplace.

13. Plaintiff maintained an exemplary work record throughout her almost four-year tenure with Defendant. During her employment as a Staff Design Engineer, Plaintiff received no disciplinary or performance issues, and had no attendance or tardiness issues. Plaintiff only received positive reviews until the year she was terminated in 2020. In addition, Plaintiff received

3

annual raises (albeit not in sufficient amounts to achieve pay equity) and performance-based bonuses until 2020, the year she was terminated.

14. During her employment, Defendant openly tolerated their employee Houlden's, aggressive, hostile, and even profane treatment of employees like the Plaintiff. Houlden openly used terms that demonstrated a misogynist view toward women, such as regular use of the term "bitching" to describe an employee complaining and described closing a deal as getting a customer "pregnant." Houlden was also consistently dismissive of female engineers when they expressed ideas and appeared to interpret females asserting themselves as a direct challenge to his authority.

15. Not surprisingly, given its embrace of employees like Houlden, Defendant lagged behind in gender diversity. Of twenty-eight (28) middle management level employees at the time, only approximately five (5) were women. Further, out of the ten (10) executive-level employees, only one (1) was a woman.

16. On or about January 2019, Plaintiff was promoted from Staff Design Engineer to Engineering Manager. On paper, Plaintiff's new position was responsible for training and leading a team of three other male design engineers.

17. However, Defendant allowed an unhealthy work dynamic to flourish as Houlden actively undermined the Plaintiff in the assertion of her managerial authority, while protecting underperforming males reporting to her. While Houlden openly discouraged female employees, like the Plaintiff, from sharing their opinions, he solicited and valued input from male managers and was also known to give second and even third chances to sub-par male engineers.

   a. Houlden also failed to support Plaintiff's attempt to performance manage one of her male staff design engineers (hereinafter, "John Doe 1"). In March 2019, it was evident to the Plaintiff that John Doe I did not possess the skills listed on his resume. When the

Plaintiff attempted to address John Doe 1's performance issues with Houlden and HR, he dismissed her concerns, telling her to "let it go." Instead, Defendant Houlden removed John Doe 1 from Plaintiff's chain of command and had them report directly to him.

b. Additionally, in November 2019, another male engineer (hereinafter, "John Doe 2") was hired into a position that was to report directly to Plaintiff. However, upon start of his employment with Defendant, John Doe 2 reported to Houlden instead. Like John Doe 1, John Doe 2 also oversold his qualifications for the position and struggled in the role.

c. On or around March 2020, Houlden demoted the Plaintiff from an Engineering Manager to an individual contributor as Senior Staff Engineer. Houlden provided no clear explanation for the adverse action at the time, but later claimed she was demoted "based on the consultant's recommendation." This justification is pretextual. To the contrary, the consultant emailed the Plaintiff stating he makes it a practice not to make recommendations about participant's work positions.

d. In contrast, Houlden promoted John Doe 2 to Engineering Manager in August 2020 and John Doe 1 to Engineering Manager in November 2020, despite their having overstated their qualifications and greatly struggling in their existing engineering duties.

e. Holden continued to treat the Plaintiff much more harshly and rudely than her male counterparts. In August 2020, Houlden filled the Plaintiff's performance review with false criticism and unnecessary negative comments. When the Plaintiff opposed the discriminatory treatment and attempted to fill in the "employee comments" portion of the performance evaluation, Houlden bullied the Plaintiff, stating that she "shouldn't go off and write a bible study," "don't do that bullshit with me," and "no one is going to read" her comments.

f.  On September 17, 2020, Plaintiff submitted a detailed rebuttal establishing the false bases for Houlden's evaluation of her.

g.  Houlden's hostile treatment of the Plaintiff became more open and apparent over time with other employees joined in on the discriminatory treatment of her. On November 4th, 2020, Daeho Kim ("Kim"), a colleague on the device team, rudely interrupted the Plaintiff during a team meeting, screaming at her to "stop, stop, just stop." Just like with John Does 1 and 2, Defendant Houlden seemingly had no issue with Kim's conduct.

h.  On or about December 14, 2020, Houlden abruptly terminated the Plaintiff, where he accused the Plaintiff of having an argument with Kim, an apparent reference to the November 4th meeting in which Kim was the aggressor. Houlden also referenced the Plaintiff's opposition to his discriminatory performance review stating, "I told you on your review, don't do a thesis on the feedback on your review to me, you don't listen."

18. Defendant also discriminated against the Plaintiff with regards to her severance and stock. Defendant offered the Plaintiff a mere two (2) weeks of base and COBRA insurance. This offer was grossly deficient when compared to the packages believed to be offered individuals outside the Plaintiff's protected class.

19. Defendant also forfeited the Plaintiff's unvested Restricted Stock Awards ("RSA"). Every year for the first four years of employment 25% of the Plaintiff's shares were to be vested. Defendant fired the Plaintiff only two (2) months and three (3) weeks away from vesting the remaining 25% of RSA shares. In contrast, as a courtesy, on at least three (3) occasions, Defendant is believed to have allowed other white male employees to accelerate the vesting of their remaining shares.

6

20. The Plaintiff is also believed to have been paid a disproportionately lower salary compared to counterparts outside her protected class(es). While the Plaintiff voluntarily took a lower salary at the start of her employment in exchange for more RSAs in early 2017, Defendant perpetuated the lower salary by providing her raises that failed to bring her into alignment with her male peers as the RSAs passed. Defendant's abrupt termination of the Plaintiff shortly before her remaining 25% of stocks were scheduled to vest only further magnified the unequal pay.

## IV. LEGAL CLAIMS

### COUNT I
*(Wrongful Discharge in Violation of North Carolina Public Policy)*

21. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

22. The public policy of the state of North Carolina as set forth in the Equal Employment Practices Act, N.C. Gen. Stat. § 143-422 *et seq.*, prohibits employers from discriminating against an employee because of the employee's sex, national origin, and/or race.

23. Defendant is, and at all relevant times, was a covered employer under the public policies of the state of North Carolina.

24. Defendant violated these public policies by terminating the Plaintiff because she is a female of Asian descent, discriminating against her sex, race, and/or national origin.

25. As a proximate cause of Defendant's wrongful conduct, Plaintiff has suffered lost income, lost bonuses and commissions, and other fringe benefits, diminished earning capacity, damage to reputation, medical expenses, consequential damages, and other damages in an amount sufficient to invoke Superior Court jurisdiction under N.C.G.S. §7A-243, and is otherwise entitled to recover compensatory damages in a sufficient amount to invoke Superior Court jurisdiction under N.C.G.S. §7A-243.

7

26. Defendant's actions were done maliciously, willfully or wantonly, or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in a sufficient amount to invoke Superior Court jurisdiction under N.C.G.S. §7A-243.

## Count II
### *(Violations of Title VII of the Civil Rights Act of 1964)*

27. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

28. Plaintiff is, and at all relevant times, was an employee covered by the protections of Title VII.

29. Defendant is, and at all relevant times was, an employer as defined in 42 U.S.C. § 2000e(b) and subject to the prohibitions of Title VII.

30. Title VII prohibits discrimination in the terms and conditions of employment based on sex, national origin, and race.

31. Defendant engaged in unlawful employment practices by discriminating against her because of her sex, race, and/or national origin by: (i) discriminating against her in pay and benefits (including with respect to her salary, accelerating the vesting of shares upon termination and severance pay); (ii) subjecting her to an unlawful hostile work environment; and (iii) by wrongfully terminating her.

32. As a proximate cause of the unlawful acts of Defendant, Plaintiff has suffered lost wages, lost bonuses and other fringe benefits, diminished earning capacity, reputational damages, emotional distress, anxiety, humiliation, expenses, and other damages and is therefore entitled to recover compensatory damages and consequential damages in an amount sum sufficient that

8

subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C. Gen. Stat. § 7A-243.

33. Defendant's actions were done maliciously, willfully, or wantonly or in a manner that recklessly disregarded Plaintiff's rights. As a result of this outrageous conduct, Plaintiff is entitled to recover punitive damages in a sum sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C. Gen. Stat. § 7A-243, treble damages and punitive damages.

## COUNT III
### *(Violations of the Equal Pay Act of 1963)*

34. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

35. Defendant is, and at all relevant times, was an employer under the Equal Pay Act ("EPA").

36. Plaintiff is, and at all relevant times, was an employee under the provisions of the Equal Pay Act.

37. The Equal Pay Act requires that men and women in the same workplace be given equal pay for equal work. All forms of pay are covered by this law, including with respect to stock issuances and severance pay. 29 U.S.C. §206(d)(1) (1938).

38. Defendant violated the EPA by paying the Plaintiff at a lesser rate than comparable male peers during her employment, by not accelerating her stock shares when she was terminated (as it has done with comparable male employees) and by paying her less severance than it had paid to comparable male employees.

40. Defendant lacked a good faith or reasonable grounds to discriminate against Plaintiff in this fashion such that liquidated damages are recoverable.

9

41. Defendant's actions were done maliciously, willfully, or wantonly or in a manner that recklessly disregarded Plaintiff's rights such that a three year look back period is appropriate.

## JURY TRIAL DEMANDED

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment against Defendant and order Defendant to pay Plaintiff compensatory damages in excess of an amount sum sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C. Gen. Stat. § 7A-243 and punitive damages;

2. Enter a judgement awarding Plaintiff liquidated and punitive damages;

3. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

4. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances, including front pay; and

5. Grant Plaintiff a trial of this matter by a jury.

This the 18th day of February, 2022.

Josh Van Kampen (NC Bar No. 32168)
Van Kampen Law, PC
315 East Worthington Avenue
Charlotte, North Carolina 28203
Phone: 704-247-3245
Fax: 704-749-2638
josh@vankampenlaw.com
*Attorney for Plaintiff*